```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 5/8/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEMESIS 2 LLC,

                      Plaintiff,

        v.

PASCAL SALVATI,

                      Defendant.

No. 19-CV-3373 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Nemesis 2 LLC has moved pursuant to Federal Rule of Civil Procedure 55 for a default judgment against Defendant Pascal Salvati. For the reasons set forth below, the motion is granted, and the Clerk of Court is directed to enter a default judgment against Salvati.

## BACKGROUND

    The Court assumes the parties' familiarity with the facts and procedural history of this case. Therefore, only what is relevant to this Order is set forth below.

    Plaintiff filed this action in the Supreme Court of New York, New York County on February 19, 2019 against Salvati, as well as Defendants Robert Paladino, Andre Rola Cabral, and Pure Brazilian Company, S.L. ("Pure Brazilian"). Plaintiff sought to recover money owed to it pursuant to an unpaid promissory note (the "Note") from Pure Brazilian – the noteholder – and three guarantors of the Note – Salvati, Paladino, and Cabral. On April 16, 2019, the action was removed to this Court. Dkt. 1. To date, Paladino is the only defendant to have appeared.[1]

---

[1] On November 26, 2019, "th[is] action [was] dismissed as against Defendant Cabral, without prejudice to the action being reopened and reinstated by Plaintiff against Defendant Cabral upon Plaintiff's presentation to the Court of satisfactory evidence that Defendant Cabral has been duly served with process." Dkt. 61.

On June 21, 2019, Plaintiff moved for a default judgment against Pure Brazilian. Dkt. 23. After a show cause hearing at which no one appeared on Pure Brazilian's behalf, the Court granted Plaintiff's motion and entered a default judgment against Pure Brazilian on October 21, 2019. Dkt. 57. The Court awarded Plaintiff $647,783.56 – the amount owed to Plaintiff pursuant to the Note. Dkt. 61.

A month later, on November 21, 2019, the Court addressed Plaintiff's and Paladino's cross-motions for summary judgment. Granting summary judgment in Plaintiff's favor, the Court concluded that Paladino had breached his obligation as a guarantor of the Note and was jointly and severally liable with Pure Brazilian for the amount owed to Plaintiff pursuant to the Note. Dkt. 58. The Court, therefore, entered a judgment "against Defendant Robert Paladino in the amount of $600,000" and held that "Plaintiff have execution therefor against Defendant Paladino to the extent that the amount of $600,000 or less remains due and payable on the Note pursuant to the Court's Order and Default Judgment entered in this action on October 21, 2019[.]" Dkt. 61. According to Plaintiff, to date, Pure Brazilian and Paladino have not satisfied the judgments against them. Dkt. 68 ¶ 7.

On November 25, 2019, Plaintiff informed the Court that it was close to completing service of process on Salvati in Switzerland.[2] Dkt. 62. On December 17, 2019, Plaintiff filed a certificate of service, reflecting that Salvati had been served on November 26, 2019 in accordance with the rules of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). Dkt. 63; *see also* Dkt. 64 (advising the Court that "Defendant Pascal Salvati was duly served with process in this action in Switzerland pursuant to the Hague Convention").

---

[2] The time limit on service prescribed in Federal Rule of Civil Procedure 4 "does not apply to service in a foreign country under Rule 4(f)[.]" Fed. R. Civ. P. 4(m).

Salvati's time to respond to the complaint expired in late December, at which time Plaintiff informed the Court that it "intend[ed] shortly to move for entry of a default judgment against [him]." Dkt. 64.

On January 15, 2020, the Clerk of Court issued a certificate of default against Salvati. Dkt. 66. Shortly thereafter, Plaintiff filed the instant motion for a default judgment against Salvati, Dkt. 67, and on January 28, the Court issued an order requiring Salvati to appear and show cause at a hearing on March 5, as to why a default judgment should not be entered against him in favor of Plaintiff. Dkt. 70.

Approximately one day prior to the March 5th show cause hearing, Salvati contacted the Court by telephone and Plaintiff by telephone and e-mail. He "request[ed] a 60-day adjournment of the show cause conference" on the grounds that "he intended to attend the Hearing in person to 'close the matter' but now cannot travel to New York due to the coronavirus outbreak because he is currently in Milan, Italy." Dkt. 73. In light of the ongoing public health crisis, the Court adjourned the show cause hearing and gave Salvati another opportunity to respond to Plaintiff's motion for a default judgment. Accordingly, it ordered Salvati to submit a letter, no later than April 4, 2020, "explaining why he has not yet appeared in this action, and [to] file opposition papers to Plaintiff's motion for a default judgment." Dkt. 74. The Court stated that it would review any papers submitted by Salvati and then determine "whether the show cause hearing should be rescheduled." *Id.* This Order was sent to Salvati at the e-mail address he provided to Chambers over the phone.

Salvati did not respond to the Court's Order by April 4, nor at any point since then. Therefore, on April 29, the Court filed an order stating that, "[i]n light of Mr. Salvati's failure to submit any papers, as well as the COVID-19 crisis, [it] has determined that it will not have a

show cause hearing and will instead resolve this matter on the papers." Dkt. 75. Over 60 days have passed since his request for a 60-day adjournment of the show cause hearing, thus the Court will now resolve Plaintiff's motion for default judgment against Salvati on the papers.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a court may, on a plaintiff's motion, enter a default judgment against a defendant who "has failed to plead or otherwise defend" itself in an action brought against it. Fed. R. Civ. P. 55(a). In particular, "the court may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Generally speaking, "a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)

## DISCUSSION

### I. Service

It is axiomatic that "[a] default judgment may not be granted . . . if the defendant has not been effectively served with process." *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014); *see also Aspex Eyewear Inc. v. Cheuk Ho Optical Int'l Ltd.*, Nos. 00-CV-2389, 01-CV-1315 (RMB), 2005 WL 3501900, at *1 (S.D.N.Y. Dec. 21, 2005) ("A default judgment 'obtained by way of defective service is void *ab initio* and must be set aside as a matter of law.'" (citation omitted)). The burden is on the plaintiff to prove that service was adequate. *See Alsaud*, 12 F. Supp. 3d at 687.

Here, Plaintiff has satisfied its burden of proving that it adequately served Salvati. On November 26, 2019, Plaintiff served Salvati with, among other papers, the summons, civil cover

4

sheet, notice of removal, and its motion for summary judgment – filed in lieu of a complaint – at his address in Switzerland. Dkt. 63. This means of service complied with Federal Rule of Civil Procedure 4(f)(1), which governs service on an individual in a foreign country and provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention[.]" Fed. R. Civ. P. 4(f)(1); *see also Advanced Aerofoil Tech., AG v. Todaro*, No. 11-CV-9505 (ALC), 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) ("[T]he Hague Convention's procedures for service are mandatory because Switzerland . . . [is] signator[y] to that Convention."). With the certificate of service filed in this Court, Plaintiff also filed a copy of the certificate of service executed by the Swiss court on December 2, 2019 and a copy of its application for service of process under the Hague Convention. Dkt. 63, Ex. A, B.

Plaintiff also adequately served its motion for a default judgment and supporting papers on Salvati pursuant to Federal Rule of Civil Procedure 5. On January 29, 2020, Plaintiff served Salvati with the motion, supporting papers, and the Court's January 28 Order scheduling the show cause hearing by mail via Federal Express and the United States Postal Service ("USPS"). These documents were mailed to Salvati's known address in Switzerland – the same address where Salvati was served on November 26, 2019 in accordance with Rule 4(f)(1). Dkt. 71. A Federal Express tracking receipt confirms that those documents were delivered to Salvati – and signed for by him – on January 30, 2020. Dkt. 71, Dillon Aff., Ex. A. Similarly, a receipt shows that USPS delivered these documents on February 3 and 4, 2020. Dkt. 71, Dillon Aff., Ex. B, C. In addition to those mailings, Plaintiff's counsel e-mailed the motion, supporting papers, and January 28 Order to two known e-mail addresses for Salvati. Dkt. 71, Chau Aff., Ex. A .

5

This process satisfies Plaintiff's requirements under Rule 5 for serving papers filed after an action has commenced. Rule 5(b)(2) provides that "[a] paper is served under this rule by . . . mailing [papers] to the person's last known address – in which event service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). Local Civil Rule 55.2(c) of the United States District Courts for the Southern and Eastern Districts of New York also permits mailing a default judgment motion and supporting papers to a defendant. *See* Local Civ. R. 55.2 ("Unless otherwise ordered by the Court, all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) above shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual)[.]").[3] Here, Plaintiff mailed the requisite papers to Salvati at his last known residence, providing reasonable notice to him that a default judgment motion was pending against him. *See, e.g.*, *Moskovitz v. La Suisse*, No. 06-CV-4404 (CM), 2013 WL 6197163, at *3 (S.D.N.Y. Nov. 25, 2013) (finding the mailing of default judgment papers to be sufficient to satisfy service). Moreover, there is no doubt that Salvati was aware of this pending default judgment motion because a day prior to the show cause hearing, Salvati told both the Court and Plaintiff that he had received copies of the pending motion for default judgment by mail and e-mail in January and had intended to appear at the hearing. Dkt. 73. Salvati was also aware that he had until April 4 to respond to Plaintiff's default judgment motion since he was sent the Court's March 4 Order by e-mail from Chambers – to the same address that he had provided the Court earlier that day.

Accordingly, the Court concludes that Plaintiff has demonstrated that it adequately served Salvati.

---

[3] The Local Rules note that, "[a]lthough Fed. R. Civ. P. 55(b) does not require service of notice of an application for a default judgment upon a party who has not appeared in the action, the Committee believes that experience has shown that mailing notice of such an application is conducive to both fairness and efficiency[.]" Local Civ. R. 55.2.

**II. Liability**

Because Plaintiff has proven that it properly served Salvati, the Court turns to whether – accepting Plaintiff's factual allegations as true – Salvati's liability is established as a matter of law. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund*, 779 F.3d at 187. In its sole cause of action against Salvati, Plaintiff alleges that he breached his obligation as a guarantor of the Note. *See* Dkt. 68, Ex. I. To establish a *prima facie* case for judgment as a matter of law, Plaintiff must show (1) there was an underlying obligation that has not been paid; (2) there was a guarantee of that underlying obligation; and (3) the guarantor – here, Salvati – has failed to make payment in accordance with the guarantee's terms. *See Consolidated Rail Corp. v. Primary Indus. Corp.*, 901 F. Supp. 765, 768 (S.D.N.Y. 1995).

The Court has already considered the liability of Paladino, another guarantor of the Note. In granting Plaintiff's motion for summary judgment, the Court concluded that Paladino had breached his guarantee obligation and, because Pure Brazilian still owed Plaintiff the amount promised to it in the Note, Paladino was liable for $600,000 – the amount at which his guarantee obligation was capped. *See* Dkt. 58.

Because Salvati's guarantee was nearly identical to Paladino's, the analysis regarding Salvati's liability is largely the same. Along with Paladino and Cabral, Salvati agreed to serve as a guarantor of the Note that Pure Brazilian gave Plaintiff on May 25, 2018. Pursuant to the Note, Pure Brazilian promised to repay Plaintiff $400,000 for the principal loan, as well as a Structuring Fee and accrued interest. In his guarantee of that Note, also executed on May 25, 2018, Salvati agreed to "secure the prompt and complete payment, observance and performance of all of the obligations of the Borrower [Pure Brazilian] under the Note in an aggregate amount not to exceed Six Hundred Thousand U.S. Dollars." Dkt. 68, Ex. I-D. The guarantee also

provided that Salvati's obligation was triggered upon Plaintiff's demand for payment and that Salvati "hereby unconditionally and irrevocably guarantees to the Noteholder the prompt and complete payment and performance of all the Guaranteed Obligations." *Id.*

As the Court previously explained in granting Plaintiff's motions for a default judgment against Pure Brazilian, *see* Dkt. 57, and summary judgment against Paladino, *see* Dkt. 58, there is no dispute about the relevant facts here. Pure Brazilian did not pay the amount owed to Plaintiff pursuant to the Note, and thus that amount became due and owing. Nor is there any dispute that Salvati agreed to guarantee the Note and remains bound to that obligation. *See* Dkt. 68, Ex. I-D. On November 7, 2018, after Pure Brazilian missed its deadline to pay the Note and subsequently did not respond to Plaintiff's demand for immediate payment, *see* Dkt. 68, Ex. I-G, Plaintiff demanded payment from Salvati, as well as the two other guarantors:

> [A]s of the date hereof, the Borrower has not paid the amounts due and owing to the Noteholder. As a result of the Borrower's failure to pay all amounts due and owing under the Note on the Maturity Date, an Event of Default under the Note has occurred and is continuing . . . . The aforesaid principal balance, accrued and unpaid interest, and the Structuring Fee are **'*Guaranteed Obligations'*** under your Guarantee that you are presently obligated to pay to Noteholder in an aggregate amount not to exceed Six Hundred Thousand U.S. Dollars (U.S. $600,000.00) pursuant to your Guarantee.

Dkt. 68, Ex. I-G. Despite this demand, none of the three guarantors paid the amount due.

Plaintiff has, therefore, demonstrated (1) the existence of an underlying obligation owed by Pure Brazilian that has not been paid; (2) the existence of a guarantee of that underlying obligation by Salvati; and (3) that Salvati has failed to make a payment in accordance with his guarantee's terms. *See Consolidated Rail Corp.*, 901 F. Supp. at 768. For this reason, Plaintiff has established Salvati's liability for breach of his guarantee, and its motion for a default judgment against Salvati is granted.

**III.   Damages**

Finally, the Court considers Plaintiff's request for damages from Salvati. Plaintiff seeks $600,000 in damages against Salvati – the amount for which Salvati agreed to serve as a guarantor.[4] Dkt. 68 ¶ 13. This amount accounts for "(i) [the] principal Loan amount of $400,000, as set forth in the Note; (ii) interest on the $400,000 Loan amount at the rate of 15% per annum from and after May 25, 2018, as contractually stated in the Note; (iii) a Structuring Fee of $150,000, as set forth in the Note; and [(4)] interest on the $150,000 Structuring Fee at the rate of 9% per annum from and after September 24, 2018, as provided by law." *Id.*

Based on Plaintiff's submissions, there is a sufficient basis to determine damages on the papers and an evidentiary hearing is unnecessary. *See William Mark Corp. v. 1&CC et al.*, No. 18-CV-3889 (RA), 2019 WL 4195365, at *2 n.5 (S.D.N.Y. May 20, 2019) ("An inquest into damages may be conducted 'on the papers,' without an evidentiary hearing where there is a sufficient basis on which to make a calculation."). Pursuant to the guarantee that Salvati signed, he agreed to be liable for $600,000 of the amount owed to Plaintiff pursuant to the Note. Dkt. 68, Ex. I-D. According to Plaintiff, at the time it filed this motion against Salvati, "Defendants [Pure Brazilian] and Paladino have made no payments in satisfaction of the Judgments against them," thus the entire amount still remains due and owing and Salvati remains liable for $600,000 of that amount. Dkt. 68 ¶ 7. And while Plaintiff has already obtained judgments against Pure Brazilian and Paladino as to this outstanding amount, that does not prohibit the Court from also entering a judgment against Salvati. Plaintiff has established that Defendants

---

[4] Plaintiff "is not seeking attorneys' fees," and has "waive[d] costs, for purposes of entry of a default judgment against Defendant Salvati." Dkt. 68 ¶ 13.

are jointly and severally liable for the amount owed pursuant to the Note and that "it is only seeking a single recovery of the amounts due and owing pursuant to the Note." Dkt. 68 ¶ 13.

Because the Court can here "ascertain the amount of damages [owed] with reasonable certainty," *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999), it concludes that Salvati is liable to Plaintiff for $600,000 in damages.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a default judgment against Salvati is granted. The Clerk of Court is respectfully requested to enter a default judgment against Salvati in the amount of $600,000 to be joint and several with Pure Brazilian and Paladino. The Clerk of Court is further respectfully directed to terminate the motion pending at docket 67, and close this case.

Dated:    May 8, 2020
          New York, New York

_____
Ronnie Abrams
United States District Judge